[Cite as *State v. Perry*, 2013-Ohio-1540.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 98302**

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# DAMIEN PERRY

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-400753

**BEFORE:** Kilbane, J., Stewart, A.J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** April 18, 2013

**ATTORNEY FOR APPELLANT**

Steve W. Canfil
1370 Ontario Street
Standard Building
Suite 2000
Cleveland, Ohio 44113-1701

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
Katherine Mullin
Assistant County Prosecutor
The Justice Center - 8th Floor
1200 Ontario Street
Cleveland, Ohio 44113

MARY EILEEN KILBANE, J.:

{¶1} In this delayed appeal, defendant-appellant, Damien Perry ("Perry"), appeals his guilty plea to aggravated murder, which carried a felony murder specification, making it a capital offense, and aggravated robbery. For the reasons set forth below, we affirm.

{¶2} In 2001, Perry and codefendant, Kareem Ali ("Ali"), were charged in a three-count indictment resulting from the death of Salim Lababidi ("Lababidi"). Counts 1 and 2 charged both men with aggravated murder and carried a felony murder specification and a firearm specification. The aggravated murder charges were capital offenses eligible for the death penalty because of the felony murder specifications. Count 3 charged both men with aggravated robbery and carried a firearm specification.

{¶3} The facts of this case were previously set forth by this court in Ali's appeal, *State v. Ali*, 8th Dist. No. 82076, 2004-Ohio-1782 (a direct appeal by Ali), *rev'd on other grounds*, *In re Ohio Criminal Sentencing Statutes Cases,* 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174. On January 16, 2001, Perry enlisted Ali's assistance with his plan to rob a grocery store owned by Lababidi. The aggravated murder and aggravated robbery were recorded on the store's videotape surveillance camera. The videotape captures the entire incident. It clearly depicts Perry standing behind the

counter, pointing a gun to Lababidi's head. Perry ordered Lababidi to open the cash register drawer. Ali stood on the other side of the counter and had his gun pointed at Lababidi. When Lababidi opened the cash register, Ali reached over the counter and grabbed money from the drawer. Perry then noticed that Lababidi had a gun. Perry began to struggle with Lababidi. Lababidi then shot his gun several times, shooting Perry in the stomach and Ali in the shoulder and the groin. Ali came around behind the counter and shot and killed Lababidi. Perry and Ali then fled the scene. *Id.* at ¶ 7, 10-11.

{¶4} The evidence at Ali's trial established that Perry was the mastermind behind the robbery. Perry testified that he planned the robbery of the store with Carmelita Seay ("Seay"), a friend of his who lived across the street from Lababidi's store. He and Ali were at her apartment, smoking marijuana cigarettes laced with PCP. Perry came up with the idea to rob a store and Seay suggested that Lababidi's store would be easy to rob. At that time, Perry enlisted Ali's assistance to rob the store. *Id.* at ¶ 9.

{¶5} Perry then parked his car next to the store and retrieved two semiautomatic handguns from the car. He gave Ali a .25 caliber semiautomatic handgun and kept one gun for himself — a .9 millimeter semiautomatic handgun. Perry testified that Seay went into the store first to make sure no customers were present and then left. Perry and Ali then entered the store, where Perry immediately ran behind the counter to Lababidi and held a gun to his head, ordering him to open the cash register drawer. Perry further testified that Ali stood across from the counter, pointing the gun at Lababidi. When

Lababidi opened the drawer, Ali grabbed the money from the drawer. Perry then noticed that Lababidi had a gun. Perry began struggling with him and Lababidi shot his gun several times. Lababidi shot Perry in the stomach and Ali in the shoulder and the groin. Ali came around behind the counter and shot Lababidi. Perry testified that Lababidi went limp and the two of them ran out of the store. *Id.* at ¶ 10.

{¶6} The jury found Ali guilty of the lesser included offense of felony murder with a three-year gun specification and aggravated robbery with a three-year gun specification. The trial court separately found Ali guilty of having a weapon while under disability and sentenced him to maximum, consecutive terms, totaling twenty-eight years to life in prison. *Id.* at ¶ 20.

{¶7} In January 2001, Perry proceeded to trial before a three-judge panel, but on the second day of trial, he informed the panel that he wanted to accept the State's plea agreement. The State explained, on the record, the terms of the plea agreement to the court as follows: Perry would plead guilty to Count 2 — aggravated murder, a capital offense, and a firearm specification, and Count 3 — aggravated robbery with a firearm specification. In exchange, the remaining charge, Count 1 — aggravated murder, a capital offense, and a firearm specification would be nolled, the State would stipulate that the aggravating circumstances do not outweigh the mitigating factors, and the State would recommend that Perry be sentenced to 38 years to life. The plea was contingent upon Perry's testimony in Ali's upcoming trial.

**{¶8}** The court held the plea hearing and, subsequently Perry pled guilty to Counts 2 and Count 3, and Count 1 was nolled. The court then proceeded to sentencing, ordering Perry to life in prison with the possibility of parole after 30 years on Count 2, to be served consecutive to three years in prison for the firearm specification, and five years in prison on Count 3. The court ordered that the counts be served consecutively, for a total sentence of 38 years to life in prison.

**{¶9}** Almost ten years later, in August 2011, Perry filed a pro se "motion to take judicial notice," asking the trial court to set a hearing because he was not properly advised of postrelease control when the court sentenced him in January 2002. Then in March 2012, Perry filed a pro se motion to withdraw his guilty plea, arguing that his plea was not knowingly and intelligently made because he was not advised of the maximum sentence, and the trial court erred by failing to hold a competency hearing before trial. The trial court assigned Perry counsel and set the matter for a limited resentencing hearing on postrelease control. Prior to the resentencing hearing, assigned counsel filed a memorandum of law, raising four separate issues: (1) the court failed to comply with Crim.R. 11 when it did not include any reference to postrelease control in the plea colloquy; (2) Perry's aggravated murder and aggravated robbery charges should have merged as allied offenses; (3) the court failed to hold a competency hearing; and (4) Perry's sentence is not consistent with Ali's sentence of 28 years to life in prison. At the resentencing hearing in April 2012, the trial court advised Perry that he is subject to five years of mandatory postrelease control upon his release from prison.

{¶10} Perry filed a pro se notice of appeal in April 2012. Perry was assigned appellate counsel who then filed a motion to amend Perry's notice of appeal to include a notice of delayed appeal. In July 2012, this court granted Perry's delayed appeal of his convictions and sentence. Perry now presents the following four assignments of error for review.

## ASSIGNMENT OF ERROR ONE

The trial court erred in accepting Perry's guilty pleas to the charges of aggravated (capital murder) and aggravated robbery[.]

## ASSIGNMENT OF ERROR TWO

The trial court erred in failing to merge [Perry's] convictions for aggravated murder and aggravated robbery pursuant to R.C. 2945.21(A).

## ASSIGNMENT OF ERROR THREE

Perry was deprived of his right under the United States Constitution and the Ohio Constitution to effective assistance of counsel at the original plea and sentencing hearings.

## ASSIGNMENT OF ERROR FOUR

The trial court erred in proceeding with the resentencing hearing without granting Perry a hearing on his motion to withdraw his guilty plea.

### Guilty Plea

{¶11} In the first assignment of error, Perry argues the trial court did not conform with the requirements of Crim.R. 11(C). Crim.R. 11(C)(2) requires that when a defendant pleads guilty, the trial court must personally address the defendant and

(1) determine that the defendant is making the plea voluntarily with an understanding of the nature of the charges and the maximum penalty; (2) ensure the defendant understands the effect of the plea and that the court may proceed with judgment after accepting the plea; and (3) inform the defendant and ensure that the defendant understands that he is waiving his constitutional rights to a jury trial, to confront witnesses against him, to call witnesses in his favor, and to require the State to prove his guilt beyond a reasonable doubt at a trial where the defendant cannot be forced to testify against himself.

{¶12} A trial court must strictly comply with the Crim.R. 11(C)(2) requirements regarding the waiver of constitutional rights, which means that the court must actually inform the defendant of the constitutional rights he is waiving and make sure the defendant understands them. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 18, 27.

{¶13} For nonconstitutional rights, such as the right to be informed of the maximum possible penalty, "substantial compliance" is sufficient. *Id.* at ¶ 14, citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977). "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990), citing *Stewart*. "[A] defendant must show prejudice before a plea will be vacated for a trial court's error involving Crim.R. 11(C) procedure when nonconstitutional aspects of the colloquy are at issue." *Veney* at ¶ 17. The test for prejudice is "whether the plea would have otherwise been made." *Nero* at 108.

**{¶14}** Perry first argues that the trial court failed to explain to him that he had a constitutional right not to testify on his own behalf. However, in *State v. Bey*, 85 Ohio St.3d 487, 497, 1999-Ohio-283, 709 N.E.2d 484, the Ohio Supreme Court explained:

> [Ohio courts] of appeals have held that a trial judge is not required to conduct an inquiry with the defendant about the decision whether to testify. In fact, most courts have ruled that neither the United States Constitution nor applicable rules require the trial judge to ask the defendant about the decision not to testify. We agree and hold that a trial court is not required to conduct an inquiry with the defendant concerning the decision whether to testify in his defense. (Citations omitted.)

**{¶15}** *See also State v. Ip*, 8th Dist. No. 86243, 2006-Ohio-2303, ¶ 31 (where we held that a trial court need not specifically advise a criminal defendant who pleads guilty that he is giving up the right to testify on his own behalf as a result of his plea because Crim.R. 11(C) does not expressly command it.)

**{¶16}** In the instant case, the trial court specifically informed Perry that: [d]uring the course of the trial, you would be entitled to a presumption of innocence. That means that you wouldn't have to prove anything yourself. You wouldn't have to disprove anything yourself. You wouldn't have to testify. You wouldn't have to offer evidence and you wouldn't have to call witnesses.

Accordingly, the court strictly complied with Crim.R. 11 by informing Perry of his constitutional right not to testify.

**{¶17}** Perry also argues that he did not have adequate time to discuss the ramifications of his plea with defense counsel. A review of the record, however, reveals that Perry had discussed his case with defense counsel on a regular basis for almost one

year. Perry exercised his right to trial, but then decided to plead guilty on the second day of trial. Defense counsel stated that they have been working on Perry's case for almost a year. During that time, "we have had communications * * * with [Perry] weekly or every other week at the jail. We have been in continuous contact with his family[.]" Defense counsel also discussed the terms to the plea agreement with the State on a number of occasions. Defense counsel was "satisfied that [Perry] understands all of his rights. He understands he's waiving them. He understands completely the terms of this plea agreement."

{¶18} Moreover, Perry advised the trial court that he had discussed his case and the plea agreement with defense counsel and understood the information given to him by defense counsel. He further stated that he was satisfied with defense counsel's representation. In the instant case, Perry enlisted Ali's assistance with the robbery. He stated to the trial court, "me and [Ali] went into the store and intended to rob. We had guns and somebody got hurt, and [Lababidi] died." Ten years later, there is no indication in the record that Perry's decision to attack the validity of his guilty plea was anything other than a mere "change of heart," which is not a sufficient basis upon which a defendant can rely upon. *State v. Britton*, 8th Dist. No. 98158, 2013-Ohio-99, ¶ 20, citing *State v. Carey*, 8th Dist. No. 97444, 2012-Ohio-3359. Based on the foregoing, we find that Perry had adequate time to consider his guilty plea.

{¶19} Perry further argues that the trial court failed to fully inform him of the consequences for violating postrelease control. A review of the plea colloquy reveals

that the trial court advised Perry that he was subject to five years of postrelease control with respect to the aggravated robbery count, but not with respect to the aggravated murder count.

{¶20} In *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 25, the Ohio Supreme Court held that when the trial court fails to mention postrelease control "at all" during a plea colloquy, the court fails to comply with Crim.R. 11, and the reviewing court must vacate the plea and remand the cause. But, "some compliance" with the rule with respect to postrelease control "prompts a substantial-compliance analysis and the corresponding 'prejudice' analysis." *Id.* at ¶ 23. As we previously stated, the test for prejudice is "whether the plea would have otherwise been made." *Nero*, 56 Ohio St.3d at 108, 564 N.E.2d 474.

{¶21} Upon review, we find that the trial court substantially complied with the requirement that Perry be advised of postrelease control sanctions. Under the totality of the circumstances, Perry subjectively understood the effect of his plea. Furthermore, Perry has failed to demonstrate any prejudice, i.e., that had he been "properly" advised about postrelease control at his plea hearing, he would not have entered the plea.

{¶22} Here, Perry faced the death penalty, but under the plea agreement, he was sentenced to 38 years to life in prison instead. At the plea hearing, Perry never indicated that he had any confusion about his sentence. Additionally, the record reflects the trial court held a limited resentencing hearing in April 2012 and advised Perry of five years of mandatory postrelease control, as the Ohio Supreme Court mandated in *State v. Fischer*,

128 Ohio St.3d 92, 2010-Ohio-6238, 942 N.E.2d 332, paragraphs two and three of the syllabus (even if an offender pleaded pursuant to a defective postrelease control notification, only the defective notification portion of the sentence is void.) As a result, Perry has failed to demonstrate that he was prejudiced by the trial court's advisement at his plea about postrelease control.

{¶23} Accordingly, the first assignment of error is overruled.

Merger of Allied Offenses

{¶24} In the second assignment of error, Perry argues the trial court erred when it did not merge his aggravated murder and aggravated robbery convictions.

{¶25} In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Ohio Supreme Court redefined the test for determining whether two offenses are allied offenses of similar import subject to merger under R.C. 2941.25.[1] The *Johnson* court expressly overruled *State v. Rance*, 85 Ohio St.3d 632, 1999-Ohio-291, 710 N.E.2d 699, which required a "comparison of the statutory elements in the abstract" to determine

---

[1]R.C. 2941.25 governs allied offenses and provides:

(A) Where the same conduct by defendant can be construed to constitute two or more allied offenses of similar import, the indictment or information may contain counts for all such offenses, but the defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of dissimilar import, or where his conduct results in two or more offenses of the same or similar kind committed separately or with a separate animus as to each, the indictment or information may contain counts for all such offenses, and the defendant may be convicted of all of them.

whether the statutory elements of the crimes correspond to such a degree that the commission of one crime will result in the commission of the other.

{¶26} The *Johnson* court held that rather than compare the elements of the crimes in the abstract, courts must consider the defendant's conduct. *Id*. at syllabus. The *Johnson* court found:

> In determining whether offenses are allied offenses of similar import under R.C. 2941.25(A), the question is whether it is possible to commit one offense and commit the other with the same conduct, not whether it is possible to commit one without committing the other. * * *
>
> If multiple offenses can be committed by the same conduct, then the court must determine whether the offenses were committed by the same conduct, i.e., "a single act, committed with a single state of mind." [*State*] *v. Brown*, 119 Ohio St.3d 447, 2008-Ohio-4569, 895 N.E.2d 149, at ¶ 50, (Lanzinger, J., dissenting).
>
> If the answer to both questions is yes, then the offenses are allied offenses of similar import and will be merged.
>
> Conversely, if the court determines that the commission of one offense will never result in the commission of the other, or if the offenses are committed separately, or if the defendant has separate animus for each offense, then, according to R.C. 2941.25(B), the offenses will not merge. *Id*. at ¶ 48-50.

{¶27} In the instant case, Perry entered into an agreement to serve 38 years to life in prison. The Ohio Supreme Court has found that a defendant may appeal his sentence even though it was jointly recommended by the parties and imposed by the court. *State v. Underwood*, 124 Ohio St.3d 365, 2010-Ohio-1, 922 N.E.2d 923, paragraph one of the syllabus. The *Underwood* court further found that the failure to merge allied offenses of similar import constitutes plain error. *Id.* at ¶ 31, citing *State v. Yarbrough*, 104 Ohio St.3d 1, 2004-Ohio-6087, 817 N.E.2d 845. Under Crim.R. 52(B), "[p]lain errors or

defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

{¶28} Perry pled guilty to aggravated murder, which carried a felony murder specification, making it a capital offense, in violation of R.C. 2903.01. The statute provides:

> [n]o person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery.

He also pled guilty to aggravated robbery in violation of R.C. 2911.01, which provides:

> [n]o person, in attempting or committing a theft offense * * * or in fleeing immediately after the attempt or offense, shall * * * [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it.

{¶29} Here, Perry stated that "me and [Ali] went into the store and intended to rob. We had guns and somebody got hurt, and [Lababidi] died." Perry's initial intent was to use his gun to rob Lababidi, but when Lababidi fought back and fired his gun, there was a substantial risk of harm separate from the aggravated robbery. This conduct resulted in the commission of two distinct offenses committed separately and with a separate animus as to each. As a result, these offenses do not merge for the purposes of sentencing.

{¶30} Accordingly, the second assignment of error is overruled.

Ineffective Assistance of Counsel

**{¶31}** In the third assignment of error, Perry argues that he was denied effective assistance of counsel at his plea and sentencing hearing. Perry claims trial counsel was ineffective because counsel did not: (1) fully evaluate the strength of the State's case; (2) obtain any significant benefit for Perry, as Ali's sentence was shorter than his sentence; (3) ensure that Perry made an intelligent decision in entering the guilty plea; and (4) raise the issue of merger. In *State v. Milczewski*, 8th Dist. No. 97138, 2012-Ohio-1743, ¶ 5, we stated:

> [W]hen a defendant enters a guilty plea as part of a plea bargain, he waives all appealable errors that may have occurred at trial, unless such errors are shown to have precluded the defendant from entering a knowing and voluntary plea. *State v. Kelley*, 57 Ohio St.3d 127, 566 N.E.2d 658 (1991). "A failure by counsel to provide advice [which impairs the knowing and voluntary nature of the plea] may form the basis of a claim of ineffective assistance of counsel, but absent such a claim it cannot serve as the predicate for setting aside a valid plea." *United States v. Broce*, 488 U.S. 563, 574, 109 S.Ct. 757, 102 L.Ed.2d 927 (1989). Accordingly, a guilty plea waives the right to claim that the accused was prejudiced by constitutionally ineffective counsel, except to the extent the defects complained of caused the plea to be less than knowing and voluntary. *State v. Barnett*, 73 Ohio App.3d 244, 248, 596 N.E.2d 1101 (2d Dist.1991).

**{¶32}** In the instant case, Perry had considered entering a guilty plea for some time. Initially, he exercised his right to trial before a three-judge panel. Two days into trial, however, he changed his mind. Defense counsel stated that for almost a year, "we have had communications * * * with [Perry] weekly or every other week at the jail. We have been in continuous contact with his family[.]" Defense counsel had been provided with discovery, which included the surveillance video, witness statements, and other evidence. Defense counsel was "satisfied that [Perry] understands all of his rights. He

understands he's waiving them. He understands completely the terms of this plea agreement." In addition, Perry advised the trial court that he had discussed his case and the guilty plea with defense counsel, and he understood the information given to him by defense counsel. He further stated that he was satisfied with defense counsel's representation, and that he understood the offenses to which he was pleading guilty. Defense counsel secured a plea and agreed sentence of 38 years to life, as opposed to the death penalty, contingent upon Perry's testimony in Ali's trial.

{¶33} Perry also argues defense counsel was ineffective because Ali received a lesser sentence of 28 years to life in prison. Perry's comparison is improper. Ali went to trial and was sentenced after Perry entered his guilty plea. Ali chose to have his fate decided by a jury, and subsequently he was convicted of the lesser included offense of felony murder and aggravated robbery. Whereas, Perry entered into a plea agreement knowing exactly the benefit he bargained for — the State's stipulation that the aggravating circumstances do not outweigh the mitigating factors, and a recommended sentence of 38 years to life in prison, instead of the death penalty. Perry further argues defense counsel was ineffective for failing to argue merger. However, as discussed above, the offenses are not allied. Therefore, Perry has failed to demonstrate that defense counsel precluded him from entering a knowing and voluntary guilty plea.

{¶34} Accordingly, the third assignment of error is overruled.

<u>Hearing on Postsentence Motion to Withdraw Guilty Plea</u>

**{¶35}** In the fourth assignment of error, Perry argues the trial court erred when it did not hold a hearing on his postsentence motion to withdraw his guilty plea. A motion to withdraw a guilty plea after the imposition of sentence may be granted by the trial court only to correct manifest injustice. Crim.R. 32.1. A manifest injustice is a "clear or openly unjust act," a "fundamental flaw in the path of justice so extraordinary that the defendant could not have sought redress from the resulting prejudice through another form of application reasonably available to him or her." (Citations omitted.) *State v. Smith*, 8th Dist. No. 94063, 2010-Ohio-3512, ¶ 15.

**{¶36}** The trial court's decision to deny the motion without a hearing is granted deference. *State v. Woods*, 8th Dist. No. 84993, 2005-Ohio-3425. "Deference especially attends in a case in which the record demonstrates the court conducted the original plea hearing and was familiar with the facts of the case. In such circumstances, the trial court is in the best position to assess the credibility of the movant's assertions." (Citations omitted.) *State v. Atkinson*, 8th Dist. No. 85773, 2005-Ohio-5348, ¶ 13-14

**{¶37}** Perry argues he met the manifest injustice burden because: (1) his plea was defective; (2) the court failed to consider whether his crimes were allied offenses; and (3) he received ineffective assistance of counsel.

**{¶38}** In the instant case, Perry initially exercised his right to trial before a three-judge panel in January 2002, but changed his mind on the second day of trial. The trial court then took Perry's plea, and thereafter proceeded to sentencing. Perry addressed the court, but never raised concerns about his plea. Perry filed his motion to

withdraw his guilty plea in March 2012, which was more than ten years after his plea was accepted and he was sentenced. "An undue delay between the occurrence of the alleged cause for withdrawal of a guilty plea and the filing of a motion under Crim. R. 32.1 is a factor adversely affecting the credibility of the movant and militating against the granting of the motion." *State v. Smith*, 49 Ohio St.2d 261, 361 N.E.2d 1324 (1977), paragraph three of the syllabus.

{¶39} Moreover, as previously discussed, the trial court complied with the safeguards contained within Crim.R. 11 in accepting Perry's plea, the aggravated murder and aggravated robbery charges are not allied offenses, and trial counsel was not ineffective. As indicted, Perry faced the death penalty. He pled guilty to aggravated murder, a capital offense, and aggravated robbery for an incident captured in its entirety on a videotape surveillance camera, and received 38 years to life in prison instead. Thus, based on the foregoing, we cannot say the trial court abused its discretion when it did not hold a hearing on Perry's motion to withdraw his guilty plea.

{¶40} Accordingly, the fourth assignment of error is overruled.

{¶41} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of

the Rules of Appellate Procedure.

---

MARY EILEEN KILBANE, JUDGE

MELODY J. STEWART, A.J., and
PATRICIA A. BLACKMON, J., CONCUR