[Cite as *State v. Rembert*, 2014-Ohio-300.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 99707

# STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

# JEFFREY D. REMBERT, JR.

DEFENDANT-APPELLANT

## JUDGMENT:
## AFFIRMED IN PART, REVERSED IN PART, AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-567712

**BEFORE:** McCormack, J., E.A. Gallagher, P.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** January 30, 2014

**ATTORNEY FOR APPELLANT**

Thomas A. Rein
Leader Building, Suite 940
526 Superior Ave.
Cleveland, OH 44114

**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

By: Daniel A. Cleary
Assistant County Prosecutor
8th Floor, Justice Center
1200 Ontario Street
Cleveland, OH   44113

TIM McCORMACK, J.:

{¶1} Defendant-appellant, Jeffrey D. Rembert, Jr., appeals from a judgment of the Cuyahoga County Court of Common Pleas that convicted him of aggravated murder and aggravated robbery after he pleaded guilty to these offenses. He claims his guilty plea was not knowing, intelligent, or voluntary. He also alleges various errors made by the trial court at his sentencing hearing. After a careful review of the record and applicable law, we affirm his conviction and sentence. For the limited purpose of determining the court costs and calculating jail-time credit, we remand the case to the trial court.

## Substantive Facts and Procedural History

{¶2} On July 14, 2012, Jacqueline Gavorski, age 65, returned home after a late-night grocery shopping trip. When she was unloading her car in her driveway, she was approached by Rembert, a 16-year-old who lived in the neighborhood. Rembert struck her six times with a large landscaping rock. Gavorski died on the scene from her head injuries; her pants had been pulled down to her knees. There were injuries to her arms, suggesting she was trying to defend herself during the attack.

{¶3} Rembert took Gavorski's purse and left the scene. He was later seen going through the purse with two friends. When questioned by the South Euclid police, Gavorski blamed the incident on one of the two friends. However, within the same day, the police retrieved some clothing, stained with the victim's blood, from a washing machine in the house Rembert was living in at the time. Also, a surveillance video showed Rembert walk into a nearby McDonald's in that clothing the night before the

incident.    The police also had evidence that Rembert's DNA was found on and in the rock.

{¶4}  Rembert was bound over from the juvenile court and subsequently indicted on six counts: two counts of aggravated murder, in violation of R.C. 2903.01(A) and 2903.01(B), respectively; one count of murder; two counts of felonious assault; and one count of aggravated robbery, in violation of R.C. 2911.01(A)(3).

{¶5}  Rembert pleaded guilty to aggravated murder, in violation of R.C. 2903.01(A), and aggravated robbery, in violation of R.C. 2911.01(A)(3).    For his aggravated murder offense, he was sentenced to life in prison with parole eligibility after 30 years.   For the aggravated robbery, he was sentenced to 11 years.    The two terms are to be served consecutively.

{¶6}  Rembert now appeals, raising eight assignments of error for our review. We address them in the order presented.   The first four assignments of error concern his guilty plea.

## Guilty Plea

{¶7} Crim.R. 11(C) sets forth the requirements for a valid plea.   It states, in pertinent part:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

{¶8} To ensure that pleas conform to Crim.R. 11, the trial judge must engage the defendant in a colloquy before accepting his or her plea. *See State v. Ballard*, 66 Ohio St.2d 473, 423 N.E.2d 115 (1981), paragraph one of the syllabus. "Ohio Crim.R. 11(C) was adopted in order to facilitate a more accurate determination of the voluntariness of a defendant's plea by ensuring an adequate record for review." *State v. Nero*, 56 Ohio St.3d 106, 564 N.E.2d 474 (1990).

{¶9} Crim.R. 11(C)(2)(c) delineates the five constitutional rights a trial court must personally advise a defendant he is waiving before the court can accept a guilty plea. *See Boykin v. Alabama*, 395 U.S. 238, 242-243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). For these constitutional rights delineated in Crim.R. 11(C)(2)(c), we require strict compliance. *State v. Moviel*, 8th Dist. Cuyahoga No. 86244, 2006-Ohio-697, ¶ 10. When the trial court fails to explain these constitutional rights, it is presumed the plea was entered

involuntarily and unknowingly made and therefore invalid. *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 12.

{¶10} On the other hand, regarding a defendant's nonconstitutional rights delineated in Crim.R. 11(C)(2)(a) and (b), such as the maximum possible penalty, a substantial-compliance standard applies. *State v. Stewart*, 51 Ohio St.2d 86, 92, 364 N.E.2d 1163 (1977). The test for prejudice is whether the plea would have otherwise been made. *Nero* at 108. Under the substantial-compliance standard, a slight deviation from the text of the rule is permissible, so long as the totality of the circumstances indicates that "the defendant subjectively understands the implications of his plea and the rights he is waiving," the plea may be upheld. *Id.*

{¶11} The first four assignments of error Rembert raises on appeal regarding his guilty plea concern his nonconstitutional rights, therefore, we review them under a substantial-compliance standard.

### Maximum Penalty

{¶12} Under the first assignment of error, Rembert contends he did not enter his guilty plea knowingly, intelligently, or voluntarily, because the trial court failed to properly inform him of the maximum penalties as required by Crim.R. 11(C)(2)(a).

{¶13} R.C. 2929.03 prescribes four possible sentences for aggravated murder:

> (a) Life imprisonment without parole;

> (b) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty years of imprisonment;

(c) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving twenty-five full years of imprisonment;

(d) Subject to division (A)(1)(e) of this section, life imprisonment with parole eligibility after serving thirty full years of imprisonment[.]

{¶14} The word "full" is significant in that it determines whether a prisoner's term can be reduced for good behavior or earned credit. When a defendant is sentenced to 25 *full* years or 30 *full* years of imprisonment, the prison term cannot be diminished for good behavior or by credit earned.

{¶15} Before addressing Rembert's claim, a clarification is in order regarding the court's sentence of life imprisonment in this case. The trial court, both at sentencing and in its judgment entry, stated that the defendant was sentenced to life imprisonment with parole eligibility after 30 years, without qualifying it with the word "full." Neither the state or appellant raises the issue on appeal. Therefore, we simply note that pursuant to the aggravated murder sentencing statute, when a defendant is sentenced to life imprisonment with parole eligibility after either 25 or 30 years, the years are *necessarily* "full" years, because "full" years are the only available punishment authorized by the statute when a defendant is ordered to serve 25 or 30 years before becoming eligible for parole.

{¶16} Having clarified that, we now turn to Rembert's claim that the trial court failed to properly advise him of his "maximum" penalty, in that the court did not explain to him that his sentence could not be reduced for good time or earned credit.

{¶17} The pertinent portion of the transcript of the plea hearing shows that the trial advised Rembert regarding his maximum penalty as follows: "The first count is aggravated murder, and that's an indeterminate penalty on this, which means that you may be sentenced to life in prison without any possibility of parole, or you may be sentenced to life in prison with the possibility of parole after 20, 25, or 30 years. Do you understand that?" In addition, the trial court also advised Rembert he faced between three and eleven years for aggravated robbery, which could run consecutively to the aggravated murder count.

{¶18} Rembert claims that, in not explaining his lack of eligibility for reduction of sentence based on good time or earned credit, the trial court failed to fully advise him of the "maximum" penalty for his offenses. Rembert cites no authority for his claim that the maximum penalty advisement portion of the Crim.R. 11 colloquy requires a discussion of eligibility for sentence diminution, or a lack thereof, for a defendant like him. We are aware of no such authority. The maximum penalty for Rembert's offense of aggravated murder is life imprisonment without parole pursuant to R.C. 2929.03. Rembert was so advised. Rembert was also notified that, for the aggravated robbery count, he faced up to 11 years, which could run consecutive to the aggravated murder count. The first assignment of error is without merit.

**Maximum Fines**

{¶19} Under the second assignment of error, Rembert claims his plea was not knowing because the trial court failed to correctly inform him of the maximum fines that

could be imposed on him. The record reflects that the trial court erroneously advised Rembert that the maximum fine for aggravated murder was $15,000, when in fact the maximum fine for the offense was $25,000. *See* R.C. 2929.02.

{¶20} However, as the advisement of maximum penalty does not pertain to a constitutional right, Rembert must show a prejudicial effect. The test is whether the plea would have been made otherwise. In other words, Rembert must show that, although he pleaded guilty knowing he could receive life imprisonment without any parole eligibility, had he known the maximum fine was $25,000 instead of $15,000, he would not have pleaded guilty. He does not even attempt to make such a demonstration on appeal. Therefore, the second assignment of error is without merit.

### Lack of Eligibility for Community Control Sanctions (Probation)

{¶21} Under the third assignments of error, Rembert claims his plea was not valid because the trial court failed to advise him that he would not be eligible for community control sanctions (formerly known as probation). Pursuant to Crim.R. 11(C)(2)(a), the trial court must, "where applicable," inform the defendant that he is not eligible for probation or for the imposition of community control sanctions. The trial court here omitted the advisement. This claim, again, pertains to a nonconstitutional right, and we review it for substantial compliance.

{¶22} Under Ohio's sentencing scheme, there is a preference for community control in lieu of prison time for lower-level felonies. *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470, ¶ 43, citing R.C. 2929.13(B). Rembert was indicted for

aggravated murder.   To claim that he suffered prejudicial effect from not being informed that he would not be eligible for community control before pleading guilty simply defies logic.

{¶23} Indeed, such a claim has long been refuted by the courts.   In *Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163, the defendant was indicted for aggravated murder.   The trial court accepted a plea to murder, but did not advise the defendant that he was not eligible for community control.   The Supreme Court of Ohio's review of the case shows that the defendant was properly advised of the consequences of his plea — that he was facing imminent prison time — although the trial judge did not recite the precise verbiage of Crim.R. 11(C)(2)(a) that the defendant was not eligible for probation.   The Supreme Court of Ohio concluded that there was substantial compliance with the rule despite the omission.   Similarly, in this case, Rembert was properly advised that he would be sentenced to either life imprisonment without parole eligibility or life imprisonment with parole eligibility after 20, 25, or 30 years.   The omission of the superfluous advisement that he would not be eligible for community control for his aggravated murder offense does not render his plea unknowing or involuntary.   The third assignment of error is without merit.

### Advisement Regarding Parole and Postrelease Control

{¶24} Under the fourth assignment of error, Rembert claims his plea is invalid because the trial court failed to properly advise him about parole and postrelease control.

**{¶25}** In *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, the Supreme Court of Ohio explained at great length the different statutory schemes for parole and postrelease control in the context of a guilty plea:

> Defendants convicted of certain classified felonies (not including aggravated murder) are subject to a mandatory period of postrelease control. See R.C. 2967.28(B). Postrelease control is a period of supervision that occurs after a prisoner has served his or her prison sentence and is released from incarceration, during which the individual is subject to specific sanctions with which he or she must comply. R.C. 2967.01(N). Violation of these sanctions may result in additional punishment, such as a longer period of control, more restrictions during the control period, or a prison term of up to nine months per violation, subject to a cumulative maximum of one-half of the original stated prison term. See R.C. 2967.28(F)(1) through (3). When a sentence includes mandatory postrelease control, the trial judge must inform the defendant of that fact in the plea colloquy or the plea will be vacated. See [*State v.*] *Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, paragraph two of the syllabus.
>
> However, an individual sentenced for aggravated murder such as [defendant] is not subject to postrelease control, because that crime is an unclassified felony to which the postrelease-control statute does not apply. R.C. 2967.28. Instead, such a person is either ineligible for parole or becomes eligible for parole after serving a period of 20, 25, or 30 years in prison. See R.C. 2929.03(A)(1); 2967.13(A). Parole is also a form of supervised release, but it is not merely an addition to an individual's sentence. When a person is paroled, he or she is released from confinement before the end of his or her sentence and remains in the custody of the state until the sentence expires or the Adult Parole Authority grants final release. R.C. 2967.02(C); 2967.13(E); 2967.15(A); 2967.16(C)(1). If a paroled person violates the various conditions associated with the parole, he or she may be required to serve the remainder of the original sentence; that period could be more than nine months. Ohio Adm.Code 5120:1-1-19(C).
>
> Even after a prisoner has met the minimum eligibility requirements, parole is not guaranteed; the Adult Parole Authority "has wide-ranging discretion in parole matters" and may refuse to grant release to an eligible offender. * * * Because parole is not certain to occur, trial courts are not required to explain it as part of the maximum possible penalty in a Crim.R. 11 colloquy.

The trial judge was not required to discuss postrelease control or parole in [the defendant's] plea colloquy under Crim.R. 11(C)(2), as [the defendant] was not eligible for postrelease control, given his plea to an unclassified felony. See R.C. 2967.28(B) and (C).

*Id*. at ¶ 35-38.

**{¶26}** In *Clark*, the defendant pleaded guilty to aggravated murder and received a sentence of life imprisonment with parole eligibility after 25 years. He claimed his plea was not knowing because the trial court incorrectly stated he would be subject to five years of postrelease control after completing his sentence of life imprisonment, when in fact he faced a lifetime of postrelease monitoring. The Supreme Court of Ohio concluded that the trial court's incorrect recitation of law did not meet the substantial-compliance standard for Crim.R. 11(C)(2)(a); however, the defendant must show that he was prejudiced by the trial court's misinformation in order to successfully vacate his guilty plea. *Id.* at ¶ 40.

**{¶27}** Here, Rembert was charged with aggravated murder and aggravated robbery. Regarding the aggravated murder offense, because parole is not certain to occur, the trial court would not be required to explain it in the plea colloquy. *Clark* at ¶ 37; *State v. Miles*, 8th Dist. Cuyahoga Nos. 98980 and 99003, ¶ 13. Furthermore, because the aggravated murder offense is an unclassified felony, Rembert is not subject to postrelease control defined in R.C. 2967.28 either. Therefore, the trial court had no obligation to include an explanation of either parole or postrelease control in the plea colloquy regarding the aggravated murder offense. *Clark* at ¶ 38.

**{¶28}** Regarding the aggravated robbery offense, Rembert is subject to five years of postrelease control upon release from prison. When the trial court fails to mention postrelease control "at all" during a plea colloquy, the court fails to comply with Crim.R. 11, and the reviewing court must vacate the plea and remand the cause. *State v. Perry*, 8th Dist. Cuyahoga No. 98302, 2013-Ohio-1540, ¶ 20, citing *Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, at ¶ 25. However, "some compliance" with the rule with respect to postrelease control prompts a substantial-compliance analysis and the corresponding prejudice analysis. *Perry* at ¶ 20, citing *Sarkozy* at ¶ 23.

**{¶29}** With this in mind, we now turn to the pertinent portion of the transcript of the plea hearing, which reflects the following advisement by the trial court:

> The charge you will plead guilty to is the first and the sixth counts of this indictment. The first count is aggravated murder, and that's an indeterminate penalty on this, which means that you may be sentenced to life in prison without any possibility of parole, or you may be sentenced to life in prison with the possibility of parole after 20, 25, or 30 years. Do you understand that?
>
> * * *
>
> And then upon your release from prison, if that happens at all, you would be on parole for the rest of your life. Do you understand that? If that ever happens, it's called post-release control.
>
> * * *
>
> Also, you are going to plead guilty to aggravated robbery, a felony of the first degree. That's the sixth count of the indictment. And that carries with it a possible period of incarceration of anywhere between three and 11 years. Any one of those yearly periods can be picked out, 3, 4, 5, 6, 7, 8, 9, 10 or 11 years. That's at a state penal institution. That can be run consecutive. Also, I have to tell you that the sentence, that would be imposed on the first count of the indictment. Do you understand that?

\* \* \*

> Which means you could soon conceivably get up to 41 years in prison. Do you understand that?

\* \* \*

> And if for some reason in the future you are released from prison, you would be subject to what we call post-release control, which is like parole, for a period of up to five years \* \* \*. If you violate that, they can take you back for an additional nine months without even trial.

**{¶30}** Pursuant to *Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, the trial court in this case need not address parole at all, but only need to inform Rembert of the five years of postrelease control for his offense of aggravated robbery. The trial court did that.

**{¶31}** Rembert, however, takes issue with the trial court's statement that "[a]nd then upon your release from prison, if that happens at all, you would be on parole for the rest of your life. Do you understand that? If that ever happens, it's called post-release control." We recognize that this statement could have been more precise. However, even if this portion of the advisement fell short of the requirement of Crim.R. 11(C)(2)(a), Rembert must show that he was prejudiced by the trial court's misstatement in order to successfully prove his guilty plea was invalid. He does not make any such demonstration. Consequently, this assignment of error lacks merit.

**{¶32}** The next four assignments of error concern Rembert's sentence.

## Court Costs

{¶33} Under the fifth assignment of error, Rembert argues the trial court's imposition of court costs in the sentence entry was improper because it did not mention court costs at the sentencing hearing.

{¶34} The Supreme Court of Ohio has held that although R.C. 2947.23(A)(1) mandates that in all criminal cases the court shall include in the sentence the costs of prosecution, it was error for the trial court to impose those costs without orally notifying the defendant at the sentencing hearing. *State v. Joseph*, 125 Ohio St.3d 76, 2010-Ohio-954, 926 N.E.2d 278, ¶ 22. The remedy for the omission is to remand the case for the limited purpose of allowing the defendant an opportunity to move the court for a waiver of the payment of those costs. *Id.* at ¶ 23. The state concedes the trial court's error in failing to mention court costs at the sentencing hearing. This assignment of error is sustained, and the case is remanded to the trial court for the purpose of determining if the defendant should pay court costs in this case.

## Jail-Time Credit

{¶35} Under the sixth assignment of error, Rembert claims the trial court erred in failing to give him credit for jail time served. Under R.C. 2967.191, a defendant is entitled to jail-time credit for confinement that is related to the offense for which he or she is being sentenced. In this case, the trial court failed to determine jail-time credit both at the sentencing hearing and in the sentence entry. The state concedes the error. The sixth assignment of error is sustained, and this case is remanded to the trial court for a determination of jail-time credit.

## Consecutive Sentences

**{¶36}** Under the seventh assignment of error, Rembert claims the trial court fails to make appropriate findings before imposing consecutive sentences for his two offenses.

**{¶37}** When reviewing consecutive sentences, this court has adopted the standard set forth in *State v. Venes*, 2013-Ohio-1891, 992 N.E.2d 453, ¶ 8-10 (8th Dist.). In that case, we explained that R.C. 2953.08 provides two grounds for an appellate court to overturn the imposition of consecutive sentences: (1) when the sentence is "otherwise contrary to law" or (2) when the appellate court clearly and convincingly finds that the record does not support the sentencing court's findings under R.C. 2929.14(C)(4). *Id.* at ¶ 11; R.C. 2953.08(G)(2).

**{¶38}** Regarding the first prong, we noted that H.B. 86, effective on September 30, 2011, revived the requirement that trial courts make certain findings before imposing consecutive sentences. Under the current R.C. 2929.14(C)(4), when imposing consecutive sentences, the trial court must first find the sentence is "necessary to protect the public from future crime or to punish the offender." Next, the trial court must find that consecutive sentences are "not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public." Finally, the trial court must find the existence of one of the three statutory factors set forth in R.C. 2929.14(C)(4)(a)-(c). Compliance with this statute "requires separate and distinct findings in addition to any findings relating to purposes and goals of criminal sentencing." *Id*. at ¶ 17. The failure to make these findings is contrary to law. *Id*. at ¶ 12.

**{¶39}** Our review of the record in this case shows that the trial court scrupulously adhered to the statutory requirements. It made separate and distinct findings for consecutive sentences required by R.C. 2929.14(C). Although not required, the trial court gave its reasons for each of the requisite findings, and its analysis regarding these findings is supported by the record. The seventh assignment of error lacks merit.

## Whether Aggravated Murder and Aggravated Robbery are Allied Offenses

**{¶40}** Under the eighth assignment of error, Rembert argues the trial court failed to make a proper determination as to whether aggravated murder and aggravated robbery are allied offenses.

**{¶41}** Ohio courts have long used a two-prong test to determine whether multiple offenses should be considered allied offenses and merged. "The first prong looks to the import of the offenses and requires a comparison of their elements." *State v. Washington,* 137 Ohio St.3d 427, 2013-Ohio-4982, ¶ 13. "If the elements 'correspond to such a degree that the commission of one offense will result in the commission of the other,' the offenses share a similar import." *Id.*, citing *State v. Mitchell*, 6 Ohio St.3d 416, 418, 453 N.E.2d 593 (1983). "The second prong looks to the defendant's conduct and requires a determination whether the offenses were committed separately or with a separate animus." *Washington* at ¶ 13.

**{¶42}** Over the years, confusion arose as to whether, under the first prong, the elements should be viewed in the abstract or in light of the particular facts of each case. In *State v. Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, the Supreme

Court of Ohio overruled its prior decision and concluded that the defendant's conduct must be considered in analyzing the first prong of the allied offenses analysis.

**{¶43}** Although *Johnson* abandoned the abstract component of the first prong, it did not change the second prong, which has always required courts to determine whether the offenses "were committed separately or with a separate animus." *Washington* at ¶ 12.

**{¶44}** Regarding aggravated murder and aggravated robbery, before *Johnson*, the Supreme Court of Ohio has repeatedly rejected the double-jeopardy claim and held that aggravated murder is not an allied offense of similar import to an underlying aggravated robbery. *State v. Coley*, 93 Ohio St.3d 253, 264-265, 754 N.E.2d 1129 (2001), citing *State v. Reynolds*, 80 Ohio St.3d 670, 681, 687 N.E.2d 1358 (1998); *State v. Smith*, 80 Ohio St.3d 89, 117, 684 N.E.2d 668 (1997).

**{¶45}** *Johnson*, 128 Ohio St.3d 153, 2010-Ohio-6314, 942 N.E.2d 1061, which instructed the court to look to the defendant's conduct in the particular case under the first prong, does not change the analysis. Rembert bludgeoned his victim to death and took her purse. Applying the first prong and considering his conduct, the two offenses do not correspond to such a degree that the commission of one offense will result in the commission of the other. Under the second prong, the two offenses were committed separately and with a separate animus. Therefore, the two offenses are not allied offenses subject to merger.

**{¶46}** We note that, at the sentencing hearing, the trial court did not consider whether the two offenses were allied offenses subject to merger, and the defense counsel

did not raise the issue. In *State v. Rogers*, 8th Dist. Cuyahoga Nos. 98292, 98584, 98585, 98586, 98587, 98588, 98589, and 98590, 2013-Ohio-3235, *conflict certified*, 2013-Ohio-4657, an allied offenses issue existed regarding whether an offender who received the property of two or more persons in a single transaction may be convicted for more than one count of receiving stolen property. The trial court did not conduct a merger analysis, and the defense counsel failed to raise the issue. This court remanded the case to the trial court for a merger analysis, even though the defense counsel's failure to raise the issue could have been construed as a waiver.

{¶47} This case does not require a remand pursuant to *Rogers*. As *Rogers* itself noted, not every case involving multiple convictions with a silent record will require an allied-offenses determination by the trial court. *Id.* at ¶ 26. *Rogers* required a remand because a facial question of allied offenses existed, yet there was insufficient facts of the defendant's actual conduct placed on the record for an appellate review. In contrast, here, the record plainly shows that Rembert's two offenses are not allied offenses and, therefore, a remand is not warranted. For these reasons, the eighth assignment of error is overruled.

{¶48} Rembert's conviction is affirmed. The case is remanded for a proper determination of court costs and jail-time credit.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
TIM McCORMACK, JUDGE

EILEEN A. GALLAGHER, P.J., and
EILEEN T. GALLAGHER, J., CONCUR