[Cite as *State v. Tutt*, 2015-Ohio-5145.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
No. 102687

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## RASHEED TUTT

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED IN PART; REVERSED IN PART;
REMANDED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-589749-E

**BEFORE:** E.A. Gallagher, P.J., E.T. Gallagher, J., and Stewart, J.

**RELEASED AND JOURNALIZED:** December 10, 2015

**ATTORNEYS FOR APPELLANT**

P. Andrew Baker
17877 St. Clair Avenue, Suite 150
Cleveland, Ohio   44110

Steve W. Canfil
55 Public Square, Suite 2100
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor
BY: Mark D. Bullard
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio   44113

EILEEN A. GALLAGHER, P.J.:

{¶1} Defendant-appellant Rasheed Tutt appeals his convictions after he pled no contest to multiple counts of drug trafficking, drug possession, possessing criminal tools, possessing a defaced firearm, receiving stolen property and tampering with evidence arising out of his role in a drug trafficking operation. Tutt's convictions were based on evidence seized during a search of Tutt's residence after Cleveland police made two successful "controlled buys" of heroin outside the residence. Tutt claims that his no contest pleas to two of the counts — Count 3, trafficking in violation of R.C. 2925.03(A)(2), and Count 4, drug possession in violation of R.C. 2925.11(A) — were not knowingly, intelligently and voluntarily made and should be vacated because the trial court failed to inform him that these offenses carried mandatory prison sentences. He also contends that the trial court erred in denying his motion to suppress the evidence obtained during the search of his residence, claiming that there was no probable cause for the issuance of the search warrant. For the reasons that follow, we reverse Tutt's convictions on Counts 3 and 4, affirm his remaining convictions and remand the case for further proceedings consistent with this opinion.

{¶2} In March 2014, members of the Cleveland Police Department conducted two "controlled buys" of heroin outside Tutt's residence at 10812 Amor Avenue in Cleveland. Based on the affidavit of Detective Robert Sauterer, which set forth facts relating to the "controlled buys" and additional information Detective Sauterer discovered during his follow-up investigation, Cleveland police obtained a search warrant to search Tutt's residence. The search warrant authorized police to search the residence and its curtilage for:

> Heroin, other narcotic drugs and/or controlled substances, and/or counterfeit controlled substances; instruments and paraphernalia used in the taking of drugs and/or preparation of illegal drugs for sale, use, or shipment including but not

limited to scales and grinders; home safes, records of illegal transactions, including but not limited to computers and computer files and discs; articles of personal property, papers and documents tending to establish the identity of the persons in control of the premises; any and all evidence of communications used in the furtherance of drug trafficking activity, including, but not limited to, pagers, cellular telephones, answering machines, and answering machine tapes; any and all other contraband, including but not limited to money and weapons being illegally possessed therein; any and all evidence pertaining to the violations of the drug laws of the State of Ohio, to wit: Sections 2925.03, 2925.11, and 2923.24 of the Ohio Revised Code.[1]

{¶3} The police executed the warrant that same day. Once inside the residence, they confiscated numerous items including several bags of heroin, crack cocaine and marijuana, a press, several scales and grinders with suspected drug residue and numerous cell phones, guns and ammunition. Tutt was subsequently indicted in Cuyahoga C.P. No. CR-14-583969-E for drug trafficking, drug possession, possessing criminal tools, possessing a defaced firearm, receiving stolen property and tampering with evidence.

{¶4} On September 5, 2014, Tutt filed a motion to suppress the evidence seized during the search arguing that the underlying affidavit failed to demonstrate probable cause for the issuance of the search warrant. After hearing argument on the issue, the trial court denied the motion.

{¶5} In October 2014, Tutt was re-indicted in Cuyahoga C.P. No. CR-14-589749-E and charged with the following offenses:

Count One — Trafficking in violation of R.C. 2925.03(A)(2), a fourth-degree felony, with a one-year firearm specification and various forfeiture specifications.

Count Two — Drug possession in violation of R.C. 2925.11(A), a fourth-degree felony, with a one-year firearm specification and various forfeiture specifications.

_____

[1]The search warrant also authorized the search of all persons located on the premises and all vehicles located on the premises. The search of those persons and vehicles is not at issue in this appeal.

Count Three — Trafficking in violation of R.C. 2925.03(A)(2), a first-degree felony, with a one-year firearm specification and various forfeiture specifications.

Count Four — Drug possession in violation of R.C. 2925.11(A), a first-degree felony, with a one-year firearm specification and various forfeiture specifications.

Count Five — Trafficking in violation of R.C. 2925.03(A)(2), a fifth-degree felony, with a one-year firearm specification and various forfeiture specifications.

Count Six — Possessing criminal tools in violation of R.C. 2923.24(A), a fifth-degree felony, with various forfeiture specifications.

Count Seven — Possessing a defaced firearm in violation of R.C. 2923.201(A)(2), a first-degree misdemeanor, with a weapon forfeiture specification.

Count Ten — Receiving stolen property in violation of R.C. 2913.51(A), a fourth-degree felony.

Count Twelve — Tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony.

Count Seventeen — Having weapons under disability in violation of R.C. 2923.13(A)(2), a third-degree felony.[2]

{¶6} The state ultimately concluded that the having weapons while under disability charge (Count 17) was "not a proper charge" and agreed to dismiss it. On January 22, 2015, Tutt pled no contest to the remaining charges (Counts 1, 2, 3, 4, 5, 6, 7, 10 and 12).

{¶7} At the plea hearing, the trial court first identified the counts to which Tutt would be pleading no contest and the classification of each offense. The trial court then reviewed the sentence ranges and maximum sentences applicable to each of the counts, including the associated firearm specifications, with Tutt, as follows:

---

[2] The original indictment was filed in CR-14-583969-E. Nine other co-defendants were also charged in the indictment. After the matter was re-indicted as Case No. CR-14-589749-E, CR-14-583969-E was dismissed.

THE COURT: Felonies of the first degree, as indicted in 589749, count 3, trafficking in drugs; count 4, possession of drugs.

Felonies of the first degree carry anywhere from 3 to 11 years in prison in yearly increments and/or a fine up to $20,000. They have a 1-year firearm specification which must be served prior to and consecutive to the base charge of 3 to 11.

Felonies of the fourth degree carry anywhere from 6 to 18 months in prison in monthly increments and/or a fine of up to $5,000.

A felony 5 carries anywhere from 6 to 12 months in prison in monthly increments and/or a fine of up to $2,500.

A first-degree misdemeanor carries anywhere from up to 6 months in county jail and/or a fine of up to $1,000.

Felony 3 carries anywhere from 9, 12, 18, 24, 30, or 36 months in prison and/or a fine of up to $10,000.

Counts 1, 2, 3, 4, 5 all have firearm specifications which must be served prior to and consecutive to the base charges.

{¶8} The trial court also advised Tutt regarding postrelease control and the property that he would be forfeiting as a result of his pleas:

Felony 1s you have mandatory 5 years post-release control. Felony 3's, 4's, and 5's, discretionary period of 3 years post-release control. Post-release control could involve restrictions on your activities. If you violate those, you could be returned up to one half of your original sentence. * * *

[Y]ou are going to forfeit cell phone, digital scales, guns * * *. You're going to forfeit $526 in U.S. currency and miscellaneous items listed in the forfeiture specifications.

{¶9} Upon inquiry by the trial court, Tutt indicated that he understood the potential penalties he faced as a result of his pleas. The trial court then proceeded to advise Tutt of his constitutional rights and confirmed that Tutt understood the rights he was giving up by entering

his no contest pleas, that no threats or promises had been made to induce Tutt to enter his pleas and that he was satisfied with his counsel. After Tutt entered his no contest pleas, the state offered three exhibits into evidence — the inventory of the items that were seized during the execution of the search warrant at Tutt's residence, a lab report setting forth the results of DNA testing performed on some of the seized items and a narcotics lab report detailing the test results of various suspected illegal substances confiscated during the search. The trial court found Tutt guilty of all the offenses to which he had pled no contest.[3]

{¶10} The trial court ordered a presentence investigation report and thereafter sentenced Tutt to an aggregate sentence of six years in prison — one year in prison on each of Counts 1, 2, 5, 6, 10 and 12, six months on Count 7, five years in prison on Counts 3 and 4 and one year on the firearm specifications, with the sentences on all counts to be served consecutive to the one-year sentence on the firearm specifications but concurrent to each other. The trial court also imposed five years of mandatory postrelease control and ordered forfeiture of the items referenced in the indictment.

{¶11} Tutt appealed his convictions, raising the following two assignments of error for review:

> Assignment of Error I: The trial court erred in failing to reverse the conviction when the plea was not made knowingly, intelligently, and voluntarily.

> Assignment of Error II: The trial court erred when it overruled defendant-appellant's motion to suppress.

**Law and Analysis**

---

[3] At the plea hearing, Tutt also entered no contest pleas in Cuyahoga C.P. No. CR-15-592482-A and was found guilty of all counts of that indictment. Those convictions are not part of this appeal.

**Compliance with Crim.R. 11(C)(2)(a)**

**{¶12}** In his first assignment of error, Tutt argues that the trial court failed to comply with Crim.R. 11(C)(2)(a) and that his no contest pleas on Counts 3 and 4 of the indictment — trafficking in violation of R.C. 2925.03(A)(2) with a one-year firearm specification and various forfeiture specifications (Count 3) and drug possession in violation of R.C. 2925.11(A) with a one-year firearm specification and various forfeiture specifications (Count 4) — were not knowingly, voluntarily and intelligently made because the trial court did not inform Tutt during the plea hearing that the sentences on the base offenses in Counts 3 and 4 "could only be mandatory prison sentences" and that, therefore, he was not eligible for probation or community control sanctions as to those offenses.

**{¶13}** In considering whether a plea was entered knowingly, intelligently and voluntarily, "an appellate court examines the totality of the circumstances through a de novo review of the record." *State v. Spock,* 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 7; *see also State v. Jackson*, 8th Dist. Cuyahoga No. 99985, 2014-Ohio-706, ¶ 6. Crim.R. 11(C)(2) governs no contest pleas in felony cases. It provides:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:
>
> > (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.
> >
> > (b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

**{¶14}** When conducting a Crim.R. 11(C)(2) plea colloquy, the trial court "must convey accurate information to the defendant so that the defendant can understand the consequences of his or her decision and enter a valid plea." *State v. Clark*, 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 26. If a defendant receives "proper information," it can be assumed that he or she understood it. *State v. Gurley*, 8th Dist. Cuyahoga No. 70586, 1997 Ohio App. LEXIS 2414, *8-9 (June 5, 1997), citing *State v. Carter*, 60 Ohio St.2d 34, 396 N.E.2d 757 (1979).

**{¶15}** In determining whether the trial court has satisfied its duties under Crim.R. 11(C)(2), reviewing courts distinguish between constitutional and nonconstitutional rights. *State v. Veney*, 120 Ohio St.3d 176, 2008-Ohio-5200, 897 N.E.2d 621, ¶ 14-21. The trial court must strictly comply with the requirements of Crim.R. 11(C)(2)(c) relating to the waiver of constitutional rights. *Id.* at ¶ 18. As to the nonconstitutional aspects of Crim.R. 11(C)(2), which includes the defendant's right to be informed of the "maximum penalty involved" and his ineligibility for probation or community control, "substantial compliance" is required. *Id.* at ¶ 14; *Spock* at ¶ 15; *State v. Nero*, 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990), syllabus. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of his plea and the rights he is waiving." *Nero* at 108. Even if a trial court makes an error in attempting to comply with Crim.R. 11(C)(2)(a), "'if it appears from the record that the defendant appreciated the effect of his plea and his waiver of rights in spite of the trial court's error, there is still substantial compliance.'" *State v. Thomas*,

8th Dist. Cuyahoga No. 94788, 2011-Ohio-214, ¶ 13, quoting *State v. Caplinger*, 105 Ohio App.3d 567, 572, 664 N.E.2d 959 (4th Dist.1995).

{¶16} If an appellate court finds that a trial court did not substantially comply with a requirement of Crim.R. 11(C)(a) or (b) relating to a nonconstitutional right, it must then make a further determination as to whether the trial court "partially complied" or "completely failed" to comply with the requirement. *Clark* at ¶ 32. If the trial court partially complied, the plea may be vacated only if the defendant demonstrates a prejudicial effect, i.e., that the defendant would not have otherwise entered the plea. *Id.*, citing *Nero* at 108, 564 N.E.2d 474. If, however, the trial court completely failed to comply, the plea must be vacated; "'[a] complete failure to comply with the rule does not implicate an analysis of prejudice.'" *Clark* at ¶ 32, quoting *State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22.

**Substantial Compliance**

{¶17} The state asserts that the trial court substantially complied with Crim.R. 11(C)(2)(a) and that Tutt's pleas as to Counts 3 and 4 were knowingly, intelligently and voluntarily made because (1) the trial court properly advised Tutt regarding the maximum term of incarceration he could receive, the "mandatory nature of the firearm specification" and postrelease control and (2) Tutt was sentenced within that range, i.e., he received less than the maximum sentence. The state argues that "a defendant must be advised of the maximum penalty for Crim.R. 11 purposes, *not his ineligibility for probation*."

{¶18} Although Crim.R.11(C)(2)(a) does not specifically require a trial court to "advise" or "inform" a defendant as part of the plea colloquy that he or she is not eligible for probation or community control sanctions — in contrast to Crim.R. 11(C)(2)(b) and (c) which require the trial

court to "inform" the defendant of certain matters prior to accepting a plea — it clearly states that a trial court shall not accept a no contest plea without first

> [d]etermining that the defendant is making the plea voluntarily, *with understanding of* the nature of the charges and of *the maximum penalty involved, and*, if applicable, *that the defendant is not eligible for probation or for the imposition of community control sanctions* at the sentencing hearing.

(Emphasis added.)   *State v. Davis*, 8th Dist. Cuyahoga No. 76085, 2000 Ohio App. LEXIS 4044, *12-13 (Sept. 7, 2000) ("Although the judge must specifically determine whether a defendant understands that he is not eligible for probation, the rule does not require him to personally inform a defendant of this fact in every circumstance. Crim.R. 11(C)(2) distinguishes between things the judge must determine from those of which he must inform a defendant regardless of whether an independent understanding is shown.").

{¶19} Thus, where a defendant faces a mandatory prison sentence as a result of a guilty or no contest plea, the trial court must determine, prior to accepting a plea, that the defendant understands that he or she is subject to a mandatory prison sentence and that as a result of the mandatory prison sentence, he or she is not eligible for probation or community control sanctions. *See, e.g., State v. Balidbid*, 2d Dist. Montgomery No. 24511, 2012-Ohio-1406, ¶ 10; *State v. Brigner*, 4th Dist. Athens No. 14CA19, 2015-Ohio-2526, ¶ 14; *State v. Hendrix,* 12th Dist. Butler No. CA2012-12-265, 2013-Ohio-4978, ¶ 6; *see also State v. Dawson*, 8th Dist. Cuyahoga No. 61828, 1993 Ohio App. LEXIS 223, *5-6 (Jan. 23, 1993) ("Substantial compliance requires that an on the record dialogue take place, where defendant is orally informed of the possible sentence. * * * The trial court cannot misinform the defendant about the possible sentence. * * * The court must inform defendant if he would be required to serve actual time in prison * * * and must disclose the length of the mandatory actual incarceration.").

**{¶20}** A trial court can meet this requirement either by expressly informing the defendant that he or she is subject to a mandatory prison sentence and is therefore ineligible for probation or community control sanctions or by confirming the defendant's subjective understanding of that fact in some other way, i.e., if the "totality of the circumstances" warrants the trial court in making a determination that the defendant otherwise understands, prior to entering his plea, that he or she is subject to a mandatory prison sentence. *See, e.g., State v. Smith*, 8th Dist. Cuyahoga No. 83395, 2004-Ohio-1796, ¶ 11 ("The mere fact that the [trial] court did not specifically say 'You are ineligible for probation' or 'This offense requires a mandatory term of prison' will not be fatal unless the record clearly indicates that the defendant was unaware that he would be sent to prison upon a plea of guilty and he was prejudiced by that fact."); *State v. McLaughlin,* 8th Dist. Cuyahoga No. 83149, 2004-Ohio-2334, ¶ 19  ("[T]he trial court need not specifically inform the defendant he is 'ineligible for probation' if the totality of the circumstances warrant the trial court in making a determination the defendant understands the offense is 'nonprobational.'").

**{¶21}** In *Nero*, *supra*, for example, the Ohio Supreme Court found substantial compliance with Crim.R. 11(C)(2)(a) where defense counsel stated on the record at the plea hearing that the defendant "knows * * * he is going to be incarcerated" and the defendant asked for time to "straighten out [his] affairs." *Nero,* 56 Ohio St.3d at 108, 564 N.E.2d 474.  Considering the "totality of the circumstances," the court concluded that these statements "indicate that [the defendant] knew that he would not receive probation" even though the trial court did not personally advise him that he was not eligible for probation. *Id.* at 108-109. *See also State v. Williams*, 8th Dist. Cuyahoga Nos. 71151, 71152, 71153 and 71154, 1997 Ohio App. LEXIS 4706, *4-7 (Oct. 23, 1997) (trial court substantially complied with Crim.R.11(C)(2)(a) where

defendant was aware, based on trial court's advisements during the plea colloquy, that his sentence involved a "mandatory," "actual sentence" of incarceration for gun specifications even though trial court did not specifically inform defendant that the sentences for the gun specifications were "non-probationable"); *State v. Rembert*, 8th Dist. Cuyahoga No. 99707, 2014-Ohio-300, ¶ 21-23 (where defendant was properly advised that he would be sentenced to either life imprisonment without parole or life imprisonment with parole eligibility after 20, 25 or 30 years, "[t]he omission of the superfluous advisement that he would not be eligible for community control for his aggravated murder offense [did] not render his plea unknowing or involuntary"), citing *State v. Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (1977), paragraph one of the syllabus.

{¶22} Where, however, (1) a trial court fails to expressly inform a defendant, prior to accepting his or her guilty or no contest plea, that the defendant is subject to a mandatory prison sentence and is not eligible for community control sanctions and (2) the totality of the circumstances do not show that the defendant otherwise subjectively understood, in entering a plea, that he or she would be subject to a mandatory prison sentence that rendered the defendant ineligible for probation or community control sanctions, the trial court does not substantially comply with Crim.R. 11(C)(2)(a). *See, e.g., State v. Douglas*, 8th Dist. Cuyahoga No. 87952, 2007-Ohio-714, ¶ 11 (although defendant was informed firearm specifications were part of indictment and plea, trial court did not substantially comply with Crim.R. 11(C)(2)(a) where it failed to inform him that the firearm specifications carried mandatory additional prison terms of one or three years); *State v. McGinnis*, 8th Dist. Cuyahoga No. 92244, 2009-Ohio-6102, ¶ 10 (trial court did not substantially comply with Crim.R. 11(C)(2)(a) where it merely notified defendant that he was subject to a fine of "up to $15,000" on drug trafficking count and never

informed defendant that, by pleading guilty to that count, he was subject to a mandatory fine of $5,000); *State v. Norman,* 8th Dist. Cuyahoga No. 91302, 2009-Ohio-4044, ¶ 12 ("compliance with the 'maximum' penalty provision of Crim.R. 11(C)(2) requires the court to inform the defendant, prior to taking a guilty plea, that a charge carries a mandatory consecutive sentence"); *State v. Lang,* 8th Dist. Cuyahoga No. 92099, 2010-Ohio-433, ¶ 9-11 (trial court did not substantially comply with Crim.R. 11(C)(2)(a) where it advised defendant that he would be subject to postrelease control for "up to three years" instead of mandatory postrelease control for five years); *see also State v. Givens*, 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, ¶ 15-17 (trial court's failure to advise defendant that guilty plea to robbery charge carried a mandatory prison term rendered plea invalid); *State v. Smith*, 5th Dist. Licking No. 13-CA-44, 2014-Ohio-2990, ¶ 11-12 (defendant's no contest pleas to four counts of rape were not knowing, intelligent and voluntary where although trial court informed defendant at the plea hearing that offenses "carr[ied] a term of mandatory incarceration," it failed to state the number of years that were mandatory); *State v. Tarleton,* 7th Dist. Belmont No. 13 BE 17, 2014-Ohio-5820, ¶ 20-25 (where trial court failed to inform defendant at plea hearing that "any part, let alone his entire sentence" was mandatory and plea agreement indicated that only three years was mandatory, trial court committed prejudicial error in accepting defendant's guilty plea); *State v. Maggard*, 1st Dist. Hamilton No. C-100788, 2011-Ohio-4233, ¶ 17 (where trial court and defense counsel stated at the plea hearing that prison term on rape counts was not mandatory and the record lacked any evidence that defendant otherwise knew he was not eligible for community control sanctions on the rape counts, trial court did not substantially comply with Crim.R. 11(C)(2)); *State v. Rand,* 10th Dist. Franklin No. 03AP-745, 2004-Ohio-5838, ¶ 21-23 (where entry of guilty plea indicated that prison sentence was not mandatory and trial court failed to advise

defendant at plea hearing that prison sentence was, in fact, mandatory, trial court did not substantially comply with Crim.R.11(C)(2)(a)).

{¶23} The rationale for such a rule is that, without an adequate understanding of mandatory prison time, a defendant cannot fully understand the consequence of his or her plea as required by Crim.R. 11(C)(2). As the court explained in *State v. Farley,* 1st Dist. Hamilton No. C-0100478, 2002 Ohio App. LEXIS 1160 (Mar. 15, 2002):

> To make a voluntary choice, the defendant must act with a "full understanding of the consequences" of his plea. * * * Because the prospect of probation or community control "would be a factor weighing heavily in favor of a plea," the fact that a community-control sanction is statutorily precluded can affect a defendant's decision to enter a guilty plea. *See State v. May*, 64 Ohio App.3d 456, 460, 581 N.E.2d 1154 (9th Dist.1989).

*Id.* at *6-8 (conviction reversed where plea form executed by defendant indicated that prison term was not mandatory for rape charge and trial court accepted defendant's guilty plea to rape charge without informing defendant that he was ineligible for probation or community control sanctions; under the totality of the circumstances court was "not convinced that [defendant] understood that he was ineligible for community control or probation"); *see also Douglas*, 2007-Ohio-714, at ¶ 10 (Without an adequate explanation of mandatory prison time, a defendant is not informed of the maximum penalty to which he is pleading guilty and cannot fully understand the consequence of his plea as required by Crim.R.11(C)).

{¶24} The state argues that this case is controlled by *State v. Thomas*, 8th Dist. Cuyahoga No. 94788, 2011-Ohio-214. We disagree. In *Thomas,* as in this case, the defendant argued that his plea should be vacated because the trial court failed to ascertain that he "knew and

understood the mandatory prison issue" and failed to inform the defendant at the sentencing hearing that he was not eligible for probation or the imposition of community control sanctions. *Id.* at ¶ 23. At the sentencing hearing in *Thomas*:

> The prosecutor outlined each charge at the beginning of the plea hearing, including whether the charge was a first-or second-degree felony. After ensuring that Thomas understood the constitutional rights he was waiving, the court stated: "You heard the prosecutor outline the offenses that you are agreeing to plead guilty to." The trial court then informed Thomas that felonies of the first degree were punishable by three to ten years in prison, and further informed him that second-degree felonies were subject to two to eight years in prison. The trial court also outlined the mandatory sentence for the firearm specifications, including the fact that he would have to "complete 3 years" in prison for the firearm specifications before he began "serving day one of any sentence on the underlying offense." The trial court also properly notified Thomas of all of the nuances of postrelease control and then asked Thomas if he understood everything that was just explained to him, to which Thomas replied that he did.

*Id.* at ¶ 24.

{¶25} In *Thomas*, however, the plea and sentence were "a package" that included an agreed-upon sentence, i.e., that the defendant would serve eight years in prison. *Id.* at ¶ 23, 26. The defendant admitted that this prison sentence was part of the deal. *Id.* Under those circumstances, the court rejected the defendant's arguments that he "did not understand that he would be sentenced to prison" and that the trial court should have discussed the fact that he "would have to be sentenced to prison" with him during the plea colloquy. *Id.* at ¶ 23, 27. The court held that "although the trial court did not specifically tell Thomas that he was not eligible for probation, it substantially complied with Crim.R.11(C)(2)(a) [by] informing Thomas of the maximum penalty he could receive, including prison." *Id.* at ¶ 25.

{¶26} In this case, at the plea hearing, the trial court outlined the range of potential sentences Tutt could receive on Counts 3 and 4 — i.e., a potential sentence of "anywhere from 3 to 11 years in prison in yearly increments" plus a "1-year firearm specification which must be

served prior to and consecutive to the base charge of 3 to 11," along with "mandatory 5 years post-release control" and forfeiture of the items "listed in the forfeiture specifications." There is no dispute that Tutt was correctly advised as to the maximum penalty he could receive for each of the offenses at issue. However, the trial court did not inform Tutt that the base offenses in Counts 3 and 4 included a mandatory prison term or that he was not eligible for probation or community control sanctions on those offenses. Even assuming that Tutt subjectively understood that he was subject to a one-year mandatory prison term on the firearm specifications,[4] we do not believe that this obviated the need for the trial court to ensure that Tutt also understood that he was subject to a mandatory prison term on the base offenses in Counts 3 and 4. Unlike in *Thomas*, there was no agreed prison sentence as part of the defendant's plea, and there is nothing else in the record that indicates that Tutt subjectively understood, prior to the trial court's acceptance of his no contest pleas, that he would have to serve a mandatory prison sentence on the base offenses in Counts 3 and 4 or what that mandatory prison term might be.

---

[4]Although in his brief, Tutt asserts in passing that the trial court "did not inform [Tutt] that the firearm sentence was mandatory," he does not claim that he did not subjectively understand that he would be serving a one-year prison term on the firearm specifications based on the trial court's advisements that Counts 3 and 4 "have a 1-year firearm specification which must be served prior to and consecutive to the base charge of 3 to 11" and "Counts 1, 2, 3, 4, 5, all have firearm specifications which must be served prior to and consecutive to the base charges." A trial court is not required to use the word "mandatory" or other particular verbiage to substantially comply with Crim.R. 11(C)(2)(a). *See, e.g., State v. Ealom,* 8th Dist. Cuyahoga No. 91455, 2009-Ohio-1365, ¶ 30 (trial court's advisement that "the State of Ohio Adult Parole Authority will supervise you for five years under what is called post-release control" was sufficient to inform defendant that postrelease control was mandatory). Tutt argues only that his no contest pleas to Counts 3 and 4 were not knowingly, intelligently and voluntarily made. He does not contend that the trial court failed to comply with Crim.R.11(C)(2)(a) with respect to any other counts, including Counts 1, 2 and 5, which also included firearm specifications.

**{¶27}** During the plea colloquy, Tutt indicated, in response to questioning by the trial court, that he was 23 and had a ninth grade education. The record further reflects that although Tutt had a prior misdemeanor conviction, he had no prior felony record. The offenses at issue — while very serious — were drug offenses, not the type of heinous crimes for which a defendant would have no reason to expect the imposition of community control sanctions. *Compare, e.g., Stewart*, 51 Ohio St.2d 86, 364 N.E.2d 1163 (murder); *Rembert*, 2014-Ohio-300, at ¶ 22-23 (aggravated murder). The trial court asked Tutt if he understood his rights as they had been explained to him by the court and the "potential penalties" he was facing but did not ask Tutt if he had any other questions related to his pleas. Tutt did not ask any questions and did not make any statements at the plea hearing that expressed an understanding that he was subject to a mandatory prison term on the base offenses in Counts 3 and 4.

**{¶28}** Considering the totality of the circumstances, we cannot say that Tutt subjectively understood at the plea hearing that he was subject to a mandatory prison term on the base offenses in Counts 3 and 4. As such, the trial court did not substantially comply with Crim.R. 11(C)(2)(a) in accepting his no contest pleas to Counts 3 and 4 of the indictment.

**Partial Compliance or Complete Failure to Comply**

**{¶29}** However, this is not the end of our inquiry. We must further determine whether the trial court partially complied — requiring a prejudice analysis — or whether it "wholly failed" to comply — requiring no prejudice analysis. Based on a thorough review of the record, we conclude that the trial court wholly failed to comply with its responsibility under Crim.R. 11(C)(2)(a) to ensure that Tutt understood that he would be subject to a mandatory prison sentence on the base offenses before accepting Tutt's no contest pleas to Counts 3 and 4.

**{¶30}** This is not a case in which the trial court informed the defendant of the mandatory nature of his sentence but in some way got it wrong, e.g., by misstating the length of the sentence or failing to adequately explain what a mandatory sentence means, or where conflicting information was provided to the defendant with respect to whether he was subject to a mandatory prison sentence. *See, e.g., State v. Hartsook*, 2014-Ohio-4528, 21 N.E.3d 617,¶ 10-17 (12th Dist.) (trial court partially complied with Crim.R. 11(C)(2)(a) where it accurately advised defendant of the maximum sentence he could receive but defendant was given inaccurate and conflicting information about the "mandatory portion of [his] potential sentence"); *State v. Smith*, 8th Dist. Cuyahoga No. 83395, 2004-Ohio-1796, ¶ 8-12 (defendant's guilty plea to aggravated robbery with a notice of prior conviction that made prison mandatory was knowing, intelligent and voluntary notwithstanding trial court's failure to expressly advise defendant that he was "ineligible for probation" or that the offense to which he was pleading guilty required a "mandatory" prison term where prosecutor explained at the plea hearing that the "[n]otice of prior conviction means [defendant] must serve a prison term of at least three years" and trial court indicated that the range of time he would be serving was from three to ten years); *see also Rembert*, 2014-Ohio-300, at ¶ 28 ("When the trial court fails to mention postrelease control 'at all' during a plea colloquy, the court fails to comply with Crim.R. 11, and the reviewing court must vacate the plea and remand the cause. * * * However, 'some compliance' with the rule with respect to postrelease control prompts a substantial-compliance analysis and the corresponding prejudice analysis.").

**{¶31}** In this case, the trial court neglected to mention to Tutt "at all" that he would have to serve a mandatory prison sentence on the base offenses in Counts 3 and 4. Because the trial court failed to inform Tutt of the mandatory prison term on the base offenses (which was a part

of the maximum penalty), before it accepted his guilty pleas, the trial court wholly failed to comply with this requirement of Crim.R. 11(C)(2)(a). As such, no prejudice analysis is required.

{¶32} In *State v. Givens,* 12th Dist. Butler No. CA2014-02-047, 2015-Ohio-361, for example, the defendant pled guilty to charges of robbery with a gun specification and petty theft. *Id.* at ¶ 3. Although the trial court properly advised the defendant at the plea hearing that he would be subject to a mandatory prison sentence on the gun specification, it failed to inform the defendant that he was also subject to a mandatory prison sentence on the base robbery charge. *Id.* at ¶ 3, 15. Instead, the trial court incorrectly advised the defendant that he may be eligible to earn days of credit while in prison and that prison was merely a "presumption." *Id.* at ¶ 4, 15. In addition, the plea form improperly indicated that there was no mandatory sentence for the robbery charge. *Id.* at ¶ 4, 15-16. The Twelfth District rejected the state's argument that the trial court substantially complied with Crim.R. 11(C)(2)(a) by advising the defendant that he would be subject to a mandatory prison sentence on the gun specification and held that the trial court had "wholly failed" to comply with Crim.R. 11(C)(2)(a). *Id.* at ¶ 15. The court reasoned that because the defendant was not advised at the plea hearing that the robbery term carried a mandatory prison term and, in fact, was expressly advised that a prison term was not mandatory, the defendant "could not have subjectively understood that he was subject to a mandatory prison term on the robbery charge." *Id.* at ¶ 16. As such, his plea was vacated. *Id.* at ¶ 23.

{¶33} A similar result is warranted here. *See also State v. Sarkozy*, 117 Ohio St.3d 86, 2008-Ohio-509, 881 N.E.2d 1224, ¶ 22, 26 (plea vacated where trial court failed to inform defendant that he was subject to a mandatory period of postrelease control); *State v. Johnson,* 8th Dist. Cuyahoga No. 92364, 2009-Ohio-5821, ¶ 15 (trial court committed reversible error where it

did not advise defendant that incarceration was mandatory for rape convictions and instead, relying upon false information provided by the state and defense counsel, informed defendant that imprisonment was discretionary); *State v. Dunham*, 5th Dist. Richland No. 2011-CA-121, 2012-Ohio-2957, ¶ 16-17 (trial court committed prejudicial error in accepting defendant's guilty plea where trial court never orally informed defendant that any portion of his prison sentence was mandatory and plea form executed by defendant evidenced confusion regarding the mandatory sentencing range, such that defendant was unaware what portion of his prison term would be mandatory at the time he pled guilty); *State v. Smith*, 5th Dist. Licking No. 13-CA-44, 2014-Ohio-2990, ¶ 11-12 (trial court's failure to notify defendant of the amount of mandatory prison time to which he was subject prior to accepting his guilty pleas resulted in invalid pleas that required reversal); *State v. Brigner,* 4th Dist. Athens No. 14CA19, 2015-Ohio-2526, ¶ 14 (trial court "wholly failed to comply" with Crim.R.11(C)(2)(a) where it erroneously advised defendant during plea hearing that there was a "presumption" he would receive prison time when, in fact, he would be subject to a mandatory prison term that would render him ineligible for community control sanctions).

{¶34} In this case, in contrast to *Givens* and a number of the other cases cited above, there is no claim that the trial court (or anyone else) provided inaccurate or conflicting information to Tutt or otherwise affirmatively misled him regarding the sentence he ultimately received. Nevertheless, because the record reflects that Tutt was unaware of the full extent of the penalties associated with his no contest pleas on Counts 3 and 4, we find that he did not enter his pleas to these charges knowingly, intelligently and voluntarily. Accordingly, Tutt's first assignment of error is sustained. We reverse Tutt's convictions on Counts 3 and 4, vacate his pleas as to Counts 3 and 4 and remand the matter for further proceedings consistent with this opinion.

**Probable Cause for the Search Warrant**

{¶35} In his second assignment of error, Tutt contends that the trial court erred in denying his motion to suppress and that his convictions should be overturned because the affidavit supporting the search warrant to search his house — the "fruits" of which led to virtually all of the charges against him[5] — did not establish sufficient probable cause to justify a search of his residence.   We disagree.

{¶36} The Fourth Amendment to the United States Constitution and Article I, Section 14 of the Ohio Constitution protect against unreasonable searches and seizures and provide that a warrant can be issued only if probable cause for the warrant is supported by an oath or affirmation and particularly describes the place to be searched and the persons or things to be seized.   *See also* Crim.R. 41(C); R.C. 2933.23.

{¶37} In deciding whether probable cause exists for the issuance of a search warrant, the issuing judge must make "'a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.'"   *State v. George*, 45 Ohio St.3d 325, 544 N.E.2d 640  (1989), paragraph one of the syllabus, following *Illinois v. Gates*, 462 U.S. 213, 238-239, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).   "[C]onsiderations to be taken into account when determining whether to issue a search warrant include how stale the information relied upon is, when the facts relied upon occurred, and whether there is a nexus between the alleged crime, the objects to be seized, and the place to be searched."   *State v. Castagnola*, Slip

---

[5]Tutt claims that, "with the possible exception" of the tampering with evidence charge, all of the charges to which he pled no contest were "the fruits of that search."

Opinion No. 2015-Ohio-1565, ¶ 34, citing 2 LaFave, *Search and Seizure*, Section 3.7(a), (b), (d). "'To establish probable cause to search a home, the facts must be sufficient to justify a conclusion that the property that is the subject of the search is probably on the premises to search.'" *State v. Marler*, 2d Dist. Clark No. 2007 CA 8, 2009-Ohio-2423, ¶ 26, quoting *State v. Freeman*, 4th Dist. Highland No. 06CA3, 2006-Ohio-5020, ¶ 13. "The nexus between the items sought and the place to be searched depends upon all of the circumstances of each individual case, including the type of crime and the nature of the evidence." *State v. Carter,* 2d Dist. Greene No. 2011 CA 11, 2011-Ohio-6700, ¶ 10, citing *Freeman* at ¶ 13.

{¶38} The duty of the reviewing court is to ensure that the issuing judge had a "substantial basis" for concluding that probable cause existed. *Castagnola* at ¶ 35; *George* at paragraph two of the syllabus. When conducting any after-the-fact scrutiny of an affidavit submitted in support of a search warrant, reviewing courts should accord "great deference" to the issuing judge's determination of probable cause; "doubtful or marginal cases should be resolved in favor of upholding the warrant." *George* at paragraph two of the syllabus. Neither a trial court nor an appellate court may substitute its judgment for that of the issuing judge by determining de novo whether the affidavit provided sufficient probable cause. *Id.*

{¶39} The search warrant in this case was issued based on an affidavit submitted by Detective Robert Sauterer, a 17-year veteran of the Cleveland Police Department who worked as a detective in the fifth district vice unit. In his affidavit, Detective Sauterer averred that he had received information from a confidential informant regarding a heroin dealer named "Lloyd" who used "runners" to sell and deliver heroin. Detective Sauterer indicated that based on the information he had received, two "controlled buys" were set up with "Lloyd" at 10812 Amor Avenue — one within a week and one within 72 hours of requesting the search warrant. Prior to

each buy, the confidential informant was searched and found to be free of any drugs, currency or other contraband. He was then given a quantity of United States currency from which the serial numbers had been pre-recorded with which to make the buy.

{¶40} Detective Sauterer averred that detectives conducted surveillance in the area of the "buys" and, in connection with the first buy, observed a male later identified as Joshua Miller exit the front door of 10812 Amor Avenue, walk directly to the confidential informant who was waiting outside and sell a quantity of suspected heroin to him. A few days later, a second controlled buy was completed at the same address. Detective Sauterer averred that he contacted the confidential informant and that arrangements were made for the confidential informant to again attempt to purchase heroin from "Lloyd." In connection with the second "buy," detectives observed an older, unidentified black male exit the front door of 10812 Amor Avenue, walk directly to the confidential informant and sell a quantity of suspected heroin to him.

{¶41} In his affidavit, Detective Sauterer stated that he also conducted an Ohio Law Enforcement Gateway ("OHLEG") computer search and discovered that (1) 10812 Amor Avenue was listed as Miller's address and (2) Tutt was reported to live at that address. Detective Sauterer also indicated that photographs of Miller and Tutt were shown to the confidential informant and that the confidential informant positively identified Miller as the man who had sold heroin to him during the first controlled buy and Tutt as "Lloyd's partner."

{¶42} The affidavit further stated that the suspected heroin purchased by the confidential informant was similar in color, texture and general appearance to other material determined to be heroin in the past, that the results of a field test conducted on the suspected heroin obtained by the confidential informant in the second buy were a "presumptive positive" for heroin and that the suspected heroin purchased by the confidential informant in both buys had

been submitted to the Cuyahoga County Regional Forensic Science Laboratory for testing but that the police had not yet obtained the results of those tests. Based on his training and experience in the detection, recognition, packaging and selling of controlled substances and dangerous drugs and the other facts included in his affidavit, Detective Sauterer averred that "he has probable cause to believe and does believe" that drug trafficking was occurring at the residence at 18012 Amor Avenue and that illegal drugs and the other items relating to the use, sale or trafficking of such drugs for which a warrant was sought would be found in the residence.

{¶43} Tutt challenges the validity of the warrant to search his residence on two bases. First, he argues that because the affidavit "did not specify the reasons * * * why contraband would likely be present at the residence," the affidavit was "so conclusory" that it "effectively presented an inference as fact," a practice prohibited under *Castagnola, supra.* Second, he contends that the affidavit did not support a finding of probable cause to search 10812 Amor Avenue because it did not establish that either of the two individuals who sold drugs to the confidential informant actually resided at the residence.

{¶44} In *Castagnola*, the Ohio Supreme Court addressed the role of inferences in determining whether probable cause exists for the issuance of a search warrant. The court indicated that although "affiants may make reasonable inferences within search warrant affidavits," the issuing judge "'must be afforded the opportunity to test any significant inference drawn by the affiant'" and that the facts upon which the affiant makes such inferences must, therefore, be disclosed in the affidavit to permit independent review by the issuing judge. *Id.* at ¶ 39-40, quoting *People v. Smith,* 180 Cal.App.3d 72, 87, 225 Cal.Rptr. 348 (1986). The court held that where an undisclosed inference is made in an affidavit, the reviewing court must first determine "whether the inference was 'so significant as to cross the line between permissive

interpretation and usurpation,' considering both the relevance and the complexity of the undisclosed inference." *Id.* at ¶ 56, quoting *People v. Caffott*, 105 Cal.App.3d 775, 783, 782, 164 Cal.Rptr. 499 (1980). If an inference is "so significant" as to cross that line, the reviewing court must then consider the affiant's animus. *Id.* at ¶ 59. In *Castagnola*, the court determined that the detective's undisclosed inference in his search warrant affidavit that the defendant had used his computer to conduct an online search of court records to locate the victim's address, negligently usurped the magistrate's inference-drawing authority, requiring the court to "excise the inference, insert the omitted underlying facts, and reassess the affidavit for probable cause." *Id.* at ¶ 57-61.

{¶45} Here, however, Tutt has not identified any "hidden inference" made by Detective Sauterer in his affidavit and presented as empirical fact. Although Detective Sauterer arguably went too far in stating in his affidavit that "*he has probable cause* to believe" that drug trafficking was occurring at Tutt's residence and that evidence of that activity would be found in the residence — since that was not his determination, but rather the determination of the issuing judge to make — he also clearly disclosed the facts from which he drew this conclusion, allowing the issuing judge to make his own independent determination of whether probable cause existed for the issuance of the search warrant. As such, *Castagnola* does not support invalidating the search warrant here. *See also U.S. v. Ventresca*, 380 U.S. 102, 108-109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) ("[A]ffidavits for search warrants * * * must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion. They are normally drafted by nonlawyers in the midst and haste of a criminal investigation. Technical requirements of elaborate specificity once exacted under common law pleadings have no proper place in this area. * * * [Whereas] probable cause [cannot] be made out by affidavits which are purely

conclusory, stating only the affiant's or an informer's belief that probable cause exists without detailing any of the 'underlying circumstances' upon which that belief is based[,] * * * where these circumstances are detailed, where reason for crediting the source of the information is given, and when a magistrate has found probable cause, the courts should not invalidate the warrant by interpreting the affidavit in a hypertechnical, rather than a commonsense, manner."); *see also State v. Dibble*, 133 Ohio St.3d 451, 2012-Ohio-4630, 979 N.E.2d 247, ¶ 24.

**{¶46}** Following a thorough review of Detective Sauterer's affidavit and consideration of the facts set forth therein, we conclude that the issuing judge had a substantial basis for finding probable cause to issue the warrant to search Tutt's residence. In two controlled buys, police observed the drug sellers exit the front door of 10812 Amor Avenue and proceed directly to the confidential informant to sell drugs to him. The information regarding the drug sales was "fresh." The two controlled buys occurred within a week or less of the issuance of the search warrant. Detective Sauterer's search of the OHLEG database provided a further link between the residence and alleged drug activity, revealing that Miller, one of the two drug sellers, had listed 10812 Amor Avenue as his residence address and that Tutt, whom the confidential informant had identified as the "partner" of "Lloyd" — i.e., the head of the suspected drug trafficking operation with whom the confidential informant had made arrangements for the drug purchases — also resided at that address. Based on this information, we find that the issuing judge could have reasonably concluded that the drugs that were sold to the confidential informant were previously stored in the house and that there was a fair probability that other drugs or evidence of drug trafficking would be found there. *See, e.g., State v. Evans,* 8th Dist. Cuyahoga No. 101485, 2015-Ohio-1022, ¶ 21 (affidavit contained sufficient facts to support probable cause finding to search defendant's house where affiant averred that police observed defendant sell

cocaine to confidential informant and return to her home immediately after sale was complete and warrant was applied for, obtained and executed within 72 hours of controlled buy); *State v. Conway,* 8th Dist. Cuyahoga No. 96905, 2012-Ohio-590, ¶ 13 (where defendant was observed either leaving or returning to his house immediately before or after controlled buys, a sufficient nexus was shown to provide probable cause to search defendant's house); *State v. Rains,* 4th Dist. Ross No. 03CA2739, 2004-Ohio-1915, ¶ 14 (detailed account in affidavit of controlled buys from defendant's house provided sufficient facts, based upon the totality of the circumstances, to support issuing judge's finding of probable cause); *State v. Turner*, 8th Dist. Cuyahoga No. 92966, 2010-Ohio-1205, ¶ 19 (finding that where police successfully conducted a controlled buy at defendant's residence three days before obtaining search warrant, probable cause existed for warrant to search residence, noting that "[s]uch facts have been routinely recognized to be enough to establish probable cause regarding the existence of the same contraband in the location").

{¶47} Tutt cites no authority in support of his claim that utility records, phone records or other evidence demonstrating that the two individuals who sold drugs to the confidential informant "actually resided at" 10812 Amor Avenue was required in order to establish probable cause to search the residence. The judge issuing the search warrant was not required to determine that Tutt's residence was the only possible source of the heroin provided in the transactions. The issuing judge need only have concluded that there was a fair probability that contraband or evidence of a crime would be found inside the residence. *See, e.g., Carter,* 2011-Ohio-6700, at ¶ 21. Given that Miller and the other unidentified suspect were seen exiting the front door of the residence and immediately approached and sold drugs to the confidential informant, there was no need to confirm that the suspects actually resided at that location to

support the issuance of the search warrant; considering the totality of the circumstances, there was a fair probability that illegal drugs or other evidence of drug trafficking activity would be found in Tutt's home regardless of whether Miller or the other suspect resided there.

**{¶48}** Because the record reflects that the issuing judge had a substantial basis for finding a fair probability that drugs and the other items specified in the search warrant would be found in Tutt's residence, the trial court did not err in refusing to suppress the evidence seized during the search of Tutt's residence. Tutt's second assignment of error is overruled.

**{¶49}** Tutt's pleas on Counts 3 and 4 are vacated; his convictions on Counts 3 and 4 are reversed; his remaining convictions are affirmed. Case remanded for further proceedings consistent with this opinion.

It is ordered that appellant and appellee share costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentences.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., CONCURS
MELODY J. STEWART, J., CONCURS WITH SEPARATE OPINION

MELODY J. STEWART, J., CONCURRING:

**{¶50}** I concur with the majority's resolution of Tutt's case but write separately to further discuss Tutt's first assignment of error — principally the court's lack of partial compliance with Crim.R. 11.

**{¶51}** In this case, the trial court was required under Crim.R. 11(C)(2)(a) to ensure that Tutt was making a voluntary plea with the understanding that Counts 3 and 4 charged nonprobationable offenses. The record establishes that prior to taking Tutt's plea, the trial court explained the applicable sentencing ranges for the drug trafficking and possession charges contained in Counts 3 and 4 as follows:

> The court: Felonies of the first degree, as indicted in 589749, count 3, trafficking in drugs; count 4, possession of drugs.
>
> Felonies of the first degree carry anywhere from 3 to 11 years in prison in yearly increments and/or a fine up to $20,000. They have a 1-year firearm specification which must be served prior to and consecutive to the base charge of 3 to 11.[6]
>
> * * *
>
> The court: Do you understand the potential penalties?
>
> The defendant: Yes.

Although not raised by the defense or noted by the majority, the trial court's statement that Tutt would receive 3–11 years on the first degree felonies *and/or* a fine up to $20,000—read literally—meant that Tutt could receive either a prison term, or a fine, or both, on counts 3 and 4. Pursuant to R.C. 2929.18, fines are considered valid community control sanctions in certain

---

[6]The drug trafficking charge in Count 3 required the court to impose a mandatory prison term within the sentencing range for a first-degree felony (i.e., 3–11 years) because the charges alleged that Tutt trafficked heroin in an amount between 50 and 250 grams. *See* R.C. 2925.03(C)(6)(f). The drug possession charge in Count 4 also required a mandatory prison term within the first-degree felony range because the amount alleged was between 50 and 250 grams. *See* R.C. 2925.11(C)(6)(e).

instances. *See* R.C. 2929.18. Thus, any attempts at partial compliance that were present in this case (i.e. the court stating the applicable prison ranges without reference to community control and then asking Tutt if he understood the penalties involved) were negated by the court's error in informing Tutt that he might receive only a fine on counts 3 and 4. The natural implication of such a statement is that a prison term is not mandatory on those offenses.[7]

---

[7] Also noteworthy is the fact that the trial court did not take a plea from Tutt in CR-14-592482, another case that Tutt would have presumably pleaded no contest to at the same plea hearing as CR-14-589749 — the case he is now appealing. At the plea hearing, defense counsel stated that Tutt would be entering no contest pleas to both cases, the court proceeded with the Crim.R. 11 colloquy, and accepted the no contest plea on CR-14-589749. The court did not take a no contest plea from Tutt in CR-14-592482, but nevertheless found Tutt guilty in both cases and ran the sentences concurrent. It is axiomatic that a court may not enter a finding of guilt and proceed to sentencing without a plea from the defendant. *See, e.g.*, Crim.R. 11(B)(3).